IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DEREK A. DEAL,

                                        Plaintiff,

         v.                                    Civil Action No.
                                               9:04-CV-0072 (LEK/DEP)

TODD YURACK and PAUL ALMSTEAD,[1]

                                        Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

DEREK A. DEAL, *Pro Se*

FOR DEFENDANTS:

HON. ANDREW CUOMO                     JAIME IRENE ROTH, ESQ.
Attorney General of the              Assistant Attorney General
State of New York
The Capitol
Albany, New York  12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____

        [1]        Defendant Paul Almstead, who is alleged to have been a corrections
lieutenant at the Oneida Correctional Facility during the times relevant to plaintiff's
claims, was mistakenly named by the plaintiff in his complaint as "Paul Armstead."
Because it now appears that the proper spelling of this defendant's name is Almstead, I
request that the clerk of the court revise his records accordingly.

## REPORT AND RECOMMENDATION

Plaintiff Derek Deal, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983 against certain corrections workers assigned to the prison facility in which he was located at the relevant times, alleging deprivation of his civil rights.  In his complaint, plaintiff maintains that he was assaulted by one of the named defendants and verbally harassed by others, and that in retaliation for having complained regarding the matter he was subjected to further harassment and verbal abuse and endured other forms of recrimination, leading to two disciplinary hearings and sixty days of disciplinary keeplock confinement. Plaintiff further alleges that during the course of those disciplinary proceedings he was deprived of procedural due process.

Currently pending before the court are cross-motions filed by the parties.  The motion process was initiated by the defendants with the filing of a motion seeking the entry of summary judgment dismissing plaintiff's claims on a number of bases.  Plaintiff has opposed that motion and cross-moved for leave to file an amended complaint in which, *inter alia,* he seeks to add claims against seven newly-named defendants.  For the

2

reasons set forth below, I recommend that defendants' motion be granted, in part, and that plaintiff's procedural due process claims, state law causes of action, and portions of his retaliation cause of action be dismissed, but that their motion otherwise be denied. Turning to plaintiff's motion, I recommend that his application for leave to amend be denied, principally in light of the current status of the action and the amount of time which has elapsed since the commencement of suit.

I.   BACKGROUND[2]

At the times relevant to his claims plaintiff was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and designated to the Oneida Correctional Facility ("Oneida").[3]  The events giving rise to plaintiff's claims have, as their genesis, an incident which occurred on January 17, 2003. On that date, plaintiff was summoned to the officers' station by defendant

---

[2]    In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).  It should be noted, however, that many if not most of plaintiff's allegations are sharply contested by the defendants.

[3]    While plaintiff was released on parole from DOCS custody in March of 2004, after the events giving rise to his claim transpired, he was re-arrested in May of 2005 and is once again a DOCS inmate.  Roth Aff. (Dkt. No. 69-14) Exh. A at pp. 86-87.

Todd Yurack, a corrections officer at the facility.  Amended Complaint (Dkt. No. 5) ¶ 7; Plaintiff's Aff. (Dkt. No. 76) ¶ 1.  Following an initial conversation, during which defendant Yurack asked the plaintiff what was wrong with his face, Yurack ordered Deal to accompany him outside onto a small porch area enclosed with steel mesh bars; once there, Yurack grabbed the plaintiff around the neck, shoving him into a brick wall. Amended Complaint (Dkt. No. 5) ¶ 7; Plaintiff's Aff. (Dkt. No. 76) ¶ 2.  As Yurack continued to squeeze the plaintiff's neck, making it difficult for him to breathe, he pulled Deal to an adjacent brick wall, causing him to scrape his hand and elbow.  Amended Complaint (Dkt. No. 5) ¶ 7; Plaintiff's Aff. (Dkt. No. 76) ¶ 2.  During the course of the incident Yurack stated to the plaintiff "don't f_ _ k with me while you are on this dorm[,]" adding "I could put you in the box anytime I want to."  Amended Complaint (Dkt. No. 5) ¶ 7; Plaintiff's Aff. (Dkt. No. 76) ¶ 3.

Following the incident, plaintiff was taken to the prison infirmary where he was examined, and photographs of his injuries were taken. Amended Complaint (Dkt. No. 5) ¶ 8; Plaintiff's Aff. (Dkt. No. 76) ¶ 6.  A report of that examination, which was conducted by Registered Nurse Lori Cook, reveals that plaintiff's injuries included a skin abrasion on the right

4

elbow, a red mark on the right side of the neck, scrapes on the fingers, and scratches on the shoulder, upper arm and wrist.[4]  Cook Aff. (Dkt. No. 69-13) ¶ 6; *see also* Roth Aff. (Dkt. No. 69-14) Exh. A at pp. 49-50.  No bleeding was reported, and Nurse Cook noted that plaintiff refused medical treatment for his injuries, other than to accept Bacitracin.  *Id.*

On January 22, 2003 plaintiff lodged a grievance, complaining of defendant Yurack's assault.  Following an investigation, which did not yield evidence supporting plaintiff's version of the events, that grievance was denied by the acting superintendent at Oneida.[5]  Yurack Aff. (Dkt. No. 69-11) ¶¶ 4-5, Exh. A.

During the relevant time period, plaintiff was issued three separate misbehavior reports for violating prison rules.  The first of those, issued on January 18, 2003, accused Deal of smoking in the bathroom.  Amended Complaint (Dkt. No. 5) ¶ 10.  Two days later plaintiff admitted the violation, apparently during a tier hearing conducted by Corrections Lieutenant

---

[4]     In his complaint, plaintiff describes the injuries resulting from the incident as "superficial."  Amended Complaint (Dkt. No. 5) ¶ 8(b).

[5]     The record does not disclose whether the plaintiff pursued an appeal of that determination to the DOCS Central Office Review Committee ("CORC").

Santos.[6]  *Id.*  Plaintiff's disciplinary record lists the sanction associated with that guilty plea as "counsel." *See* Roth Aff. (Dkt. No. 69-14) Exh. C; *see also* Amended Complaint (Dkt. No. 5) ¶ 10(b).

On January 28, 2003, plaintiff was instructed to go to the tier office, where he was questioned by Corrections Lieutenant Paul Almstead regarding the alleged assault by Officer Yurack.  Amended Complaint (Dkt. No. 5) ¶ 11; Plaintiff's Aff. (Dkt. No. 76) ¶ 10.  During that meeting, after inquiring about the incident, defendant Almstead attempted to convince the plaintiff to withdraw his grievance regarding the assault. Plaintiff's Aff. (Dkt. No. 76) ¶ 10.

Plaintiff was again taken to the tier office on the following day at which time, at the directive of defendant Almstead, he was locked in a cell next to the tier hearing room.  Amended Complaint (Dkt. No. 5) ¶ 12; Plaintiff's Aff. (Dkt. No. 76) ¶ 11.  Plaintiff was later removed from the cell and brought before defendant Almstead, who verbally harassed and

---

[6]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).  The record is unclear as to which of these levels applies to the January 20, 2003 hearing.

threatened Deal, stating in substance that in light of the plaintiff's actions Almstead was going to instruct corrections officers at the facility to issue misbehavior reports to him.  Amended Complaint (Dkt. No. 5) ¶ 12; Plaintiff's Aff. (Dkt. No. 76) ¶ 11.

On February 2, 2003 plaintiff was issued a second misbehavior report, also for smoking in an unauthorized area, this time by Corrections Officer Velardi.  Amended Complaint (Dkt. No. 5) ¶ 13; Plaintiff's Aff. (Dkt. No. 76) ¶ 13.  Plaintiff attributes the issuance of that misbehavior report to retaliatory motives, based upon his proclaimed innocence of the charge and defendant Almstead's earlier statement regarding his instruction to corrections officers to issue misbehavior reports to the plaintiff.  Plaintiff's Aff. (Dkt. No. 76) ¶ 14.  A tier hearing was subsequently conducted regarding the incident on February 3, 2003, with defendant Almstead presiding as the hearing officer.  Amended Complaint (Dkt. No. 5) ¶ 14; Plaintiff's Aff. (Dkt. No. 76) ¶¶ 16-17.  Plaintiff maintains that at that hearing he was not properly advised of his rights, and was denied the opportunity to call witnesses on his behalf, and that the hearing officer was biased against him.  Amended Complaint (Dkt. No. 5) ¶ 14; Plaintiff's Aff. (Dkt. No. 76) ¶¶ 16-17.  At the close of the hearing plaintiff was found

guilty of the violation charged and a penalty of thirty days of keeplock

confinement, with a corresponding loss of recreation, package,

commissary, and telephone privileges, was ordered, the hearing officer

noting that "past dispositions of a less severe nature have been

unsuccessful in convincing [the plaintiff] not to smoke in undesignated

areas."  Almstead Aff. (Dkt. No. 69-9) Exh. A at 6.  Hearing Officer

Almstead's determination was upheld on appeal to the facility

superintendent.[7]  *See* Amended Complaint (Dkt. No. 5) Exh. C; *see also*

Roth Aff. (Dkt. No. 76) Exh. C.

   During the course of the February 2, 2003 hearing, plaintiff

challenged defendant Almstead's impartiality and interrupted the

proceedings in an effort to voice various objections.  Almstead Aff. (Dkt.

No. 69-9) ¶ 5 and Exh. A at p. 6; *see also* Amended Complaint (Dkt. No.

5) ¶¶ 15-16.  After warning Deal that if he continued to engage in that

conduct he would be issued a misbehavior report for refusing a direct

order, without success, defendant Almstead instructed Corrections Officer

Hodge to prepare and issue a misbehavior report setting forth a new

---

[7]      Plaintiff alleges that in addition to these sanctions imposed during this
and a subsequent disciplinary hearing resulting in further SHU disciplinary
confinement, he also forfeited good time credits.

charge based upon the discrepancies.  Almstead Aff. (Dkt. No. 76) ¶ 5 and Exh. A.

A third tier hearing was conducted on February 6, 2003, with Corrections Lieutenant Santos presiding, to address this latest disciplinary charge, resulting in a finding of guilt and a penalty which included an additional thirty days of keeplock confinement, with a corresponding loss of privileges.  Roth Aff. (Dkt. No. 69-14) Exh. C.  That determination was upheld on appeal to the office of the facility's superintendent.  *See id.*; Deal Aff. (Dkt. No. 76) ¶ 18.  As a result of the latter two disciplinary proceedings, plaintiff was placed in the special housing unit ("SHU") at Oneida for a period of sixty days, and additionally was removed from the Alcohol and Substance Abuse Treatment ("A.S.A.T.") program.[8] Amended Complaint (Dkt. No. 5) ¶ 16; Deal Aff. (Dkt. No. 76) ¶ 18.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on January 21, 2004.  Dkt. No. 1.

---

[8]     In New York, SHU cells are utilized for segregating prisoners from general population areas for various reasons including, predominantly, disciplinary purposes.  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 618 (S.D.N.Y. 1998) (citing 7 NYCRR pts. 253, 254, and 301).  The conditions typically experienced by inmates confined in an SHU include two showers per week; one hour of outdoor exercise per day; unlimited legal visits; one non-legal visit per week; access to counselors; access to sick call; cell study programs; and access to library books.  *Husbands v. McClellan,* 990 F. Supp. 214, 218 (W.D.N.Y. 1998) (citing 7 NYCRR pt. 304).

Following a finding by the court that plaintiff's initial complaint failed to satisfy the applicable pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, *see* Dkt. No. 4, plaintiff submitted an amended complaint, filed on March 10, 2004.  Dkt. No. 5.  In his complaint, as amended, plaintiff has asserted claims under the First, Eighth and Fourteenth Amendments to the United States Constitution, alleging the use of excessive force, retaliation, and procedural due process violations stemming from the disciplinary hearings conducted, and additionally interposing pendent state law tort claims of assault and battery.  Named as defendants in plaintiff's complaint, *inter alia*, are Corrections Officer Yurack and Corrections Lieutenant Almstead.[9]

On November 30, 2006, following the completion of pretrial discovery, defendants moved seeking the entry of summary judgment dismissing plaintiff's complaint.  Dkt. No. 69.  In their motion, defendants argue that 1) plaintiff's Eighth Amendment excessive force claims are legally deficient in that the assault allegedly perpetrated by defendant

---

[9]     Plaintiff's amended complaint also named Corrections Sergeant Beverly as a defendant.  Plaintiff's claims against that defendant, however, were subsequently dismissed as a result of a report and recommendation issued by me on December 6, 2004, addressing a motion on defendant Beverly's behalf seeking dismissal of plaintiff's complaint for failure to state a cause of action upon which relief may be granted, Dkt. No. 21, and a subsequent order issued by District Judge Lawrence E. Kahn on April 28, 2005 accepting that recommendation in its entirety.  Dkt. No. 26.

Yurack did not rise to a level of constitutional significance, either objectively or subjectively; 2) plaintiff's pendent tort law claims are barred by N.Y. Correction Law § 24; 3) plaintiff has failed to allege a cognizable retaliation claim, in that he cannot establish either adverse action taken by defendants or a nexus between the adverse action alleged and his protected activity; 4) plaintiff's procedural due process claims are deficient, both because he did not experience a liberty deprivation sufficient to trigger the protections of the Fourteenth Amendment and because, in any event, he received the full panoply of due process rights guaranteed; 5) plaintiff's procedural due process claims are barred under *Heck and Balisok*;[10] and 6) in any event defendants are entitled to qualified immunity.  Plaintiff has responded in opposition to the motion by affidavit, memorandum and supporting documents all filed on March 22, 2007.  Dkt. No. 76.

In addition to opposing defendants' summary judgment motion, by motion filed on November 30, 2006 plaintiff has requested permission to file a second amended complaint adding various claims, including against additional defendants not named in his original and first amended

---

[10]     This portion of defendants' motion is predicated upon the Supreme Court's decisions in *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364 (1994) and *Edwards v. Balisok,* 520 U.S. 641, 117 S. Ct. 1584 (1997).

complaints.  Dkt. No. 71.  By letter brief filed on December 18, 2006,

defendants have opposed that motion.  Dkt. No. 73.

The parties' cross-motions, which are now ripe for determination,

have been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).[11]  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Motion To Amend

Plaintiff's motion implicates not only Rules 15(a) and 21 of the

Federal Rules of Civil Procedure, both of which, as will be seen, prescribe

a fairly generous standard to be applied in connection with such motions,

but additionally – since the established deadline for the filing of such

motions has long since expired under the applicable scheduling order

entered in the case –  Rule 16 of the Federal Rules of Civil Procedure,

which is significantly more exacting in its requirements.

---

[11]      As a non-dispositive matter, plaintiff's motion for leave to amend would
ordinarily fall within my jurisdiction pursuant to the reference made by the court to me
as the assigned magistrate judge. *See Rubin v. Valicenti Advisory Servs., Inc.*, 471 F.
Supp. 2d 329, 333 (W.D.N.Y. 2007).  In light of the fact that I am issuing a report and
recommendation addressing defendants' summary judgment motion, which is
dispositive and thus exceeds my non-consensual jurisdiction, however, I have chosen
to cast my determination regarding plaintiff's motion for leave to amend in the form of a
recommendation to the district judge.

Motions for leave to amend are governed by Rule 15(a) of the
Federal Rules of Civil Procedure which provides, in pertinent part, that
unless amendment as a matter of right is permitted based upon the
procedural circumstances of the case – something which is not applicable
in this action – a party may amend its pleading "only by leave of court or
by written consent of the adverse party; and leave shall be freely given
when justice so requires."  Fed. R. Civ. P. 15(a).  Under Rule 15(a), leave
to amend ordinarily should be freely granted absent undue delay, bad
faith, dilatory tactics, undue prejudice in being served with the proposed
pleading, or futility.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227,
230 (1962); *Elma R.T. v. Landesmann Int'l Mktg. Corp.*, No. 98 CIV 662,
2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000) (citing *Foman*).

Notwithstanding the familiar and well-accepted precept that such
leave should be granted freely and amendment is typically permitted,
where a claim contained in a proposed amended complaint would be
vulnerable in the face of a Rule 12(b)(6) motion, then allowing amendment
would be an act of futility which should not be countenanced.  *See*, *e.g.*,
*Saxholm AS v. Dynal, Inc.,* 938 F. Supp. 120, 124 (E.D.N.Y. 1996); *In re
Boesky Sec. Litig.,* 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995).  If, on the
other hand, a proposed claim sets forth facts and circumstances which

13

may entitle the pleader to relief, futility is not a proper basis on which to deny the right to amend.  *Saxholm*, 938 F. Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat,* 875 F. Supp. 1022, 1029 (S.D.N.Y. 1995) and *Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief)).

Generally speaking, while any delay in making a motion to amend pleadings must be weighed as a factor in deciding whether or not to grant the motion, delay in and of itself will not ordinarily suffice as a reason to deny the motion.  *Phaneuf v. Tenneco, Inc.,* 938 F.Supp. 112, 115 (N.D.N.Y.1996) (Hurd, J.).  A court must weigh any good cause shown for the delay in moving against any indication of dilatoriness of the moving party which results in last minute surprise and the inability of opposing party to address the newly added material.  *Id.*  When considering the issue of prejudice to the nonmoving party, a court may properly find that the longer the period of unexplained delay, the less that should be required of the nonmoving party in terms of a showing of prejudice.  *Id.*

Plaintiff's motion for leave to add new defendants also implicates Rule 21 of the Federal Rules of Civil Procedure.  That rule authorizes a court, "on motion of any party or of its own initiative at any stage of the

14

action and on such terms as are just . . ." to order the addition of parties to an action.  Fed. R. Civ. P. 21; *see City of Syracuse v. Onondaga County*, 464 F.3d 297, 308 (2d Cir. 2006).  The provision also permits joinder "of a person, who through inadvertence, mistake, or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *Oneida Indian Nation of New York State v. County of Oneida,* 199 F.R.D. 61, 72 (N.D.N.Y. 2000) (McCurn, S.J.) (quoting, *inter alia, United States v. Hansel*, 999 F. Supp. 694, 697 (N.D.N.Y.1998)).  A decision as to whether to permit joinder under Rule 21 is informed by the same general principles as those which govern motions for leave to amend under Rule 15(a).  *See, e.g., id.* at 72-73 (citing *Expoconsul Int'l, Inc. v. A/E Sys., Inc.,* 145 F.R.D. 336, 337 (S.D.N.Y.1993)).

Overlaid against the standard typically governing motions for leave to amend and to join parties in this instance is Rule 16(b) of the Federal Rules of Civil Procedure.  *See Kassner v. 2nd Ave. Delicatessen, Inc.,* __ F.3d __, 2007 WL 2119769, at *8-10 (2d Cir. July 24, 2007).  A scheduling order was issued in this case on November 23, 2004 establishing, *inter alia,* a deadline of January 30, 2005 for making non-dispositive motions, specifically defined within that order to include motions to join parties or to

amend pleadings.  *See* Dkt. No. 20 at 1-2.  A party may obtain relief from

such a scheduling order deadline only upon a showing of good cause.

Fed. R. Civ. P. 16(b); *see Kassner,* 2007 WL 2119769, at *8.  Despite this

requirement, plaintiff has offered nothing in support of his motion, which

was filed more than a year and a half after the passage of the controlling

deadline, which even approaches a level sufficient to establish such good

cause.  Indeed, in his papers the plaintiff evinces his longstanding

awareness of the identities of the proposed new defendants and the facts

giving rise to his allegations against them, yet despite this offers virtually

no justification for the delay in seeking leave to amend.

        Even if the court were to overlook this fatal deficiency under Rule 16

and apply the more liberal standard associated with Rules 15(a) and 21, I

would nonetheless recommend against the granting of the application.

Plaintiff's motion seeks leave to assert claims against seven additional

defendants not previously sued in the case.  While defendants have

argued, with at least facial plausibility, the futility of the claims sought to be

added against those seven individuals, the far greater concern is one of

prejudice and undue delay.  Discovery in this case, having been extended

on several occasions at plaintiff's request, is now virtually completed and

the case is well into the dispositive motion phase.  This action has been

pending for three and a half years.  Under these circumstances it would be both manifestly unfair to the defendants, and an imprudent exercise of this court's discretion, to prolong the matter and overlook the undue and unexplained delay in plaintiff seeking leave to amend at this late stage. *See*, *e.g.*, *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) (affirming district judge's denial of leave to amend complaint where plaintiff inexplicably delayed the motion until the action was pending for several years and discovery was closed, and defendants would be unduly prejudiced); *Sly Magazine, LLC v. Weider Publications L.L.C.*, 241 F.R.D. 527, 532-33 (S.D.N.Y. 2007) (denying leave to file amended complaint to add twelve new parties where plaintiff provided no explanation for delay, discovery had closed, dispositive motion practice was imminent, and undue prejudice would thus result to the defendant). Accordingly, I recommend that plaintiff's motion for leave to amend be denied.

### B.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact
to be decided with respect to any essential element of the claim in issue;
the failure to meet this burden warrants denial of the motion. *Anderson*,
477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.
In the event this initial burden is met, the opposing party must show,
through affidavits or otherwise, that there is a material issue of fact for
trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;
*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve
any ambiguities, and draw all inferences from the facts, in a light most
favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v.
Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is
inappropriate where "review of the record reveals sufficient evidence for a
rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of
Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also
Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is
appropriate only when "there can be but one reasonable conclusion as to
the verdict").

C.   Excessive Force Claim

The centerpiece of plaintiff's complaint is his claim against defendant

19

Yurack, alleging his use of excessive force which, in turn, set in motion a series of ensuing events allegedly resulting in further constitutional violations.  Arguing that the use of force alleged by plaintiff was *de minimis,* and Deal's injuries suffered were legally insignificant, defendants assert their entitlement to judgment as a matter of law dismissing the excessive force claim.[12]

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992) (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028,

---

[12]     Plaintiff also asserts that he was verbally harassed by both defendants Yurack and Almstead, as well as other prison officials.  "It is well settled that verbal harassment, inexcusable as it may be, does not rise to the level of a constitutional violation."  *Zimmerman v. Seyfert,* No. 03-CV-1389, 2007 WL 2080517, at *28 (N.D.N.Y. July 19, 2007) (McAvoy, J.) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986) and *Rameriz v. Holmes,* 921 F. Supp. 204, 210 (S.D.N.Y. 1996)).

1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414

U.S. 1033, 94 S. Ct. 462 (1973)).

Eighth Amendment analysis requires both objective and subjective

examinations.  *Hudson,* 503 U.S. at 8, 112 S. Ct. at 999; *Wilson v. Seiter*,

501 U.S. 294, 298-99, 111 S. Ct. 2321, 2324 (1991); *Griffen*, 193 F.3d at

91.  The objective prong of the inquiry is contextual, and relies upon

"contemporary standards of decency."  *Hudson*, 503 U.S. at 8 (quoting

*Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976)).  When

addressing this component of an excessive force claim under the Eighth

Amendment calculus, the court can consider the extent of the injury

suffered by the inmate plaintiff.  While the absence of significant injury is

certainly relevant, it is not dispositive, as the defendants seemingly

suggest.  *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.  The extent of an

inmate's injury is but one of the factors to be considered in determining a

prison official's use of force was "unnecessary and wanton"; courts should

also consider the need for force, whether the force was proportionate to

the need, the threat reasonably perceived by the officials, and what, if

anything, the officials did to limit their use of force.  *Whitley*, 475 U.S. at

321, 106 S. Ct. at 1085 (citing *Johnson*, 481 F.2d at 1033).  Under

*Hudson*, even if the injuries suffered by a plaintiff "'were not permanent or

severe'", a plaintiff may still recover if "'the force used was unreasonable and excessive.'"  *Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir. 1988) (quoting *Robinson v. Via*, 821 F.2d 913, 924 (2d Cir.1987)).

Seizing upon acknowledgment by the plaintiff that the injuries suffered by him at the hands of defendant Yurack were "minor" and "superficial", defendants allege that they are entitled to dismissal of plaintiff's excessive force claim as a matter of law, based upon Deal's failure to satisfy the objective element of the controlling test.  The record now before the court, however, reveals that at least according to the plaintiff, he was assaulted by defendant Yurack, without provocation, on the date in question.  The record also substantiates that plaintiff experienced some sort of incident on that date, causing him injuries which required medical attention.  *See* Dkt. No. 68 (filed under seal); *see generally* Cook Aff. (Dkt. No. 69-13).  The fact that Deal suffered injuries requiring medical attention distinguishes this case from others in which the lack of injury has justified the entry of summary judgment dismissing excessive force claims under the Eighth Amendment.  *See, e.g., Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (the fact that the plaintiff, who claims he was "bumped, grabbed, elbowed, and pushed" by the defendants did not rise to a level of constitutional significance since

plaintiff did "not maintain that he experienced any pain or injury as a result of the physical contact"); *Cunningham v. Rodriguez*, No. 01 Civ. 1123, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002).  Under these circumstances it would be inappropriate to find, objectively, as a matter of law that plaintiff's injuries were not sufficiently serious to rise to a constitutionally cognizable level.

Turning to the subjective element, as defendants argue, to prevail, plaintiff must establish defendant Yurack acted with a sufficiently culpable state of mind.  *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999).  That determination is informed by four factors, including 1) the need for application of force; 2) the relationship between that need and the amount of force used; 3) the threat reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of a forceful response.  *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085.  The principal focus of this inquiry "turns on 'whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d at 1033.  When considering the subjective element of the governing Eighth Amendment test, a court must consider that the absence of serious injury,

though relevant, does not necessarily negate a finding of wantonness

since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically
> use force to cause harm, contemporary standards
> of decency always are violated. . . . This is true
> whether or not significant injury is evident.
> Otherwise, the Eighth Amendment would permit
> any physical punishment, no matter how diabolic or
> inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000 (citations omitted); *Velasquez v.*

*O'Keefe*, 899 F. Supp. 972, 973 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting

*Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000); *see Romaine v. Rewson,* 140

F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (Kahn, J.).  Even a *de minimis* use

of physical force can constitute cruel and unusual punishment if it is

"repugnant to the conscience of mankind."[13]  *Hudson*, 503 U.S. at 9-10,

112 S. Ct. 1000 (citations omitted).

In this instance defendant Yurack has submitted an affidavit denying

summoning the plaintiff to the officer's desk or making a physical or verbal

---

[13]     It should be noted, however, that in practice a truly *de minimis* use of
force will rarely suffice to state a constitutional claim.  *Hudson*, 503 U.S. at 9-10, 112 S.
Ct. at 1000 ("[Not] every malevolent touch by a prison guard gives rise to a federal
cause of action"); *Griffen*, 193 F.3d at 91 (citing *Romano v. Howarth*, 998 F.2d 101,
105 (2d Cir. 1993)); *Johnson*, 481 F.2d at 1033 ("Not every push or shove, even if it
later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's
constitutional rights").

attack against him.  Yurack Aff. (Dkt. No. 69-11) ¶ 5.  Given this denial

and their assertion that there are no witnesses, nor any evidence, to

support plaintiff's version of the facts, defendants invite the court to find as

a matter of law that defendant Yurack did not act with a sufficiently

culpable state of mind.  Because such a determination would entail

encroachment upon the prerogative of the factfinder and require the court

to make a credibility determination inappropriate for a motion on summary

judgment, I decline that invitation and instead recommend against the

granting of summary judgment on this issue, finding the existence of

genuine issues of material fact with respect to the subjective elements as

well, requiring resolution at trial and precluding the entry of judgment on

plaintiff's excessive force claim at this juncture.

> D.    <u>Pendent State Law Tort Claims</u>

In his complaint, plaintiff has asserted pendent state law tort claims

of assault and battery against plaintiff Yurack.  Defendants argue that

plaintiff's state law claims for assault and battery are subject to dismissal,

as they are precluded by section 24 of the N.Y. Correction Law.[14]

---

[14]    That statute provides, in relevant part, that

> [n]o civil action shall be brought in any court of the state,
> except by the attorney general on behalf of the state,
> against any officer or employee of the department, in his

Section 24 protects employees of state correctional facilities from claims for damages in state or federal courts arising out of actions taken in the scope of their employment, and in the discharge of their duties. *See* N.Y. Correct. Law § 24; *see also Ierardi v. Sisco,* 119 F.3d 183, 186-87 (2d Cir. 1997); *Baker v. Coughlin,* 77 F.3d 12, 14-15 (2d Cir. 1996) (holding that section 24 applies to federal courts as well). The statute is designed to allow corrections officers to maintain safety and security at their facilities at their discretion, without fear of exposure to inmate lawsuits. *Ierardi*, 119 F.3d at 187; *Arteaga v. State,* 72 N.Y.2d 212, 218-20, 532 N.Y.S.2d 57, 60-62 (1988) (discussing policies behind immunity).

According to the New York Court of Appeals, if an act is done "while the servant [is] doing his [or her] master's work, no matter how irregularly, or with what disregard of instructions," it is performed within the scope of employment. *Riviello v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302 (1979) (citations omitted). Consistent with this precept, various courts have held that a correctional officer who uses force while on duty is acting

---

> personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correct. Law § 24(1).

26

within the scope of employment, and therefore is entitled to the protections

of section 24.[15]  *Cepeda v. Coughlin*, 128 A.D.2d 995, 996-97, 513

---

[15]   I am somewhat hesitant to summarily recommend dismissal of plaintiff's state law claims in this instance, as I think that the Third Department might well view plaintiff's claims differently.  Among the *Riviello* factors to be weighed in determining scope of employment are the extent of departure from normal methods of performance and whether the act was one that was reasonably foreseeable.  *Riviello*, 47 N.Y.2d at 303, 418 N.Y.S.2d at 302.

Cepeda v. Coughlin, relied upon by state and federal cases alike, partially considered plaintiffs' provocation of the excessive force in holding that state claims are precluded under Correction Law § 24, suggesting that a different result might obtain if, as I am required to assume for purposes of this motion, the force upon plaintiff was unprovoked.  128 A.D.2d 995, 996, 513 N.Y.S.2d 528, 530 (3d Dep't 1987); *see also Murray v. Reif*, 36 A.D.3d 1157, 1168, 828 N.Y.S.2d 669, 670 (3d Dep't 2007) (reversing lower court's conclusion on motion to dismiss, noting that if plaintiff's allegations of unprovoked assault by corrections officer were true, it cannot be concluded that defendant was acting within the scope of his employment under N.Y. Correction Law § 24).

In *Sharrow v. State*, when considering the State's duty to indemnify under Public Officers Law § 17, the Third Department specifically distinguished its holding in *Cepeda* on the grounds that unjustified force is such a substantial departure from correctional officers' goal of maintaining order, discipline, and control that the State could not possibly be required to indemnify correctional officers for such unnecessary force.  216 A.D.2d 844, 845, 628 N.Y.S.2d 878, 880 (3d Dep't 1995).  Indeed, under *Sharrow*, based on the fourth and fifth *Riviello* factors, plaintiff's claim would seem to involve conduct which is outside the scope of employment.

New York courts have not explicitly addressed this argument in the context of section 24, however, and federal courts both here and in the Western District which have encountered the issue since *Sharrow* have held otherwise.  *Heyliger v. Gebler*, __ F. Supp. 2d __, No. 06-CV-6220, 2007 WL 2153235, at *2 (W.D.N.Y. July 24, 2007); *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994) (McAvoy, J.); *Parker v. Fogg*, No. 85-CV-177, 1994 WL 49696, at *9 (N.D.N.Y. Feb. 17, 1994) (McCurn, J.); *Wright v. Kelly*, No. 950CV-0688H, 1998 WL 912026, at *3 (W.D.N.Y. Oct. 16, 1998).  Without clear contrary guidance from the Second Circuit, New York Court of Appeals, or Third Department, I feel constrained under principles of *stare decisis* to recommend dismissal of plaintiff's state law claims.

N.Y.S.2d 528, 530 (3d Dept' 1987) (excessive force by correctional officer was within scope of employment when in response to assault by inmate in course of duty); *see also Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994) (McAvoy, J.); *Parker v. Fogg*, No. 85-CV-177, 1994 WL 49696, at *9 (N.D.N.Y. Feb. 17, 1994) (McCurn, J.); *Wright v. Kelly*, No. 950CV-0688H, 1998 WL 912026, at *3 (W.D.N.Y. Oct. 16, 1998).  The proper remedy in a federal court for inmates who feel they have excessive force claims is under section 1983, not through the assertion of tort claims precluded by section 24 of the state Correction Law.  *Arteaga*, 72 N.Y.2d at 221, 532 N.Y.S.2d at 62.

Based upon the foregoing, I recommend that defendants' motion for summary judgment dismissing plaintiff's state law claims of assault and battery under section 24 of the N.Y. Correction Law be granted.

E.    Retaliation

In addition to complaining of the use of excessive force against him, plaintiff also asserts a claim of retaliation, in violation of the First Amendment, alleging that in response to his complaints regarding defendant Yurack's actions prison officials retaliated against him through the issuance of multiple misbehavior reports.  Defendants contend that plaintiff's retaliation claim is subject to dismissal as a matter of law.

28

At the outset it should be noted that "claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse.  Virtually every prisoner can assert such claims as to every decision which he or she dislikes."  *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983).  For this reason, "courts must approach prisoner claims of retaliation with skepticism and particular care."  *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty,* 713 F.2d at 13), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a substantial or motivating factor in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dawes*, 239 F.3d at 492.  If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the

29

absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).  As can be seen, evaluation of a claim of retaliation is a particularly fact-laden exercise, since such claims generally revolve around both the engaging in protected conduct, as well as establishment of a nexus between that conduct and an adverse action ultimately taken by the defendants.

In their motion, defendants concede that plaintiff's filing of a grievance on January 22, 2003 addressing defendant Yurack's actions is properly regarded as protected activity under the First Amendment. Defendants' Memorandum (Dkt. No. 69-3) at 11.  Similarly, defendants do not seriously assert that the issuance of misbehavior reports does not constitute adverse action sufficient to satisfy the second element of the governing test.  *See id.*; *see also Wells v. Wade*, No. 96 Civ. 1627, 2000 WL 1239085, at *3-4 (S.D.N.Y. Aug. 31, 2006).  The focus of defendants' motion is upon the nexus requirement, with defendants arguing that no reasonable factfinder could conclude that the issuance of misbehavior reports to the plaintiff was the result of retaliatory animus stemming from

the Yurack grievance.

Undeniably, the January 18, 2003 misbehavior report predated plaintiff's grievance against defendant Yurack, and thus could not have been caused by retaliatory animus stemming from that grievance.[16]  To this limited extent, defendants are entitled to summary judgment with regard to plaintiff's retaliation claim.

The remaining two misbehavior reports, issued on February 2, 2003, for smoking in the bathroom, and on February 3, 2003, for refusal to obey a direct order by contrast, occurred relatively shortly after the filing of plaintiff's grievance regarding corrections officer Yurack.  This factor, particularly in view of the lack of any evidence of disciplinary action against the plaintiff from the time he entered the prison system in 1999 until the first misbehavior report on January 18, 2003, at a minimum could well support an inference that retaliatory animus prompted the issuance of the second and third misbehavior reports.  *See generally Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (noting that "the temporal proximity of an alleged retaliatory misbehavior report to a grievance may serve as

---

[16]      Although listed in plaintiff's amended complaint as a relevant event, Deal does not appear to press this incident as one of the bases for his retaliation claim, undoubtedly owing to this fact.

circumstantial evidence of retaliation"); *see also Lewis v. Blazejewski*, No. 03-CV-943S, 2007 WL 542117, at *5 (W.D.N.Y. Feb. 16, 2007) (Skretny, D.J. and Schroeder, M.J.).  When, coupled with the statement attributed to defendant Almstead, to the effect that he was going to instruct prison officials to issue misbehavior reports to the plaintiff, these circumstances present genuine issues of material fact concerning the nexus element of the retaliation test thereby precluding the entry of summary judgment in connection with plaintiff's retaliation claim.  For this reason, I recommend against the entry of summary judgment dismissing plaintiff's retaliation claim as it relates to the February 2, 2003 and February 3, 2003 misbehavior reports.

  F.    Due Process

        In his complaint, plaintiff also contends that he was denied procedural due process during the course of the disciplinary hearings conducted with regard to his misbehavior reports.  Defendants now seek dismissal of that due process claim, based both upon the lack of any showing that plaintiff experienced a liberty deprivation sufficient to trigger the Fourth Amendment's due process protections, and because in any event the record reveals that he received due process during the course of the relevant disciplinary hearings.

To successfully state a claim under 42 U.S.C. § 1983 for denial of
due process arising out of a disciplinary hearing, a plaintiff must show that
he or she (1) possessed an actual liberty interest, and (2) was deprived of
that interest without being afforded sufficient process.  *See Tellier v.
Fields,* 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v.
Squillance*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d
349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the
United States Supreme Court determined that to establish a
constitutionally significant liberty interest under the circumstances now
presented, a plaintiff must sufficiently demonstrate that (1) the State
actually created a protected liberty interest in being free from segregation;
and that (2) the segregation would impose an "atypical and significant
hardship on the inmate in relation to the ordinary incidents of prison life."
*Id.* at 483-84, 115 S. Ct. at 2300; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d
at 658.  Since the prevailing view is that by its regulatory scheme New
York State has created a liberty interest in remaining free from disciplinary
confinement, thus satisfying the first *Sandin* factor, *see, e.g., LaBounty v.
Coombe*, No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26,
2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6

(N.D.N.Y. Feb. 6, 2001) (Kahn, J.), I must find that the conditions of plaintiff's SHU confinement as alleged do not rise to the level of an atypical and significant hardship under *Sandin* in order to recommend that defendants' motion be granted based upon the lack of a showing that he experienced a cognizable liberty interest deprivation.

Atypicality in a *Sandin* inquiry is normally a question of law.[17] *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).   When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement.  *See Sealey,* 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997).  In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary.[18]

---

[17]      In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution.  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).

[18]      While not the only factor to be considered, the duration of a disciplinary keeplock confinement remains significant under *Sandin.  Colon*, 215 F.3d at 231. Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin, see id.* at 232 n.5, the Second Circuit generally takes the position that SHU confinement under ordinary

*Hynes*, 143 F.3d at 658; *Arce*, 139 F.3d at 336.

In his complaint and opposing motion papers, plaintiff asserts that he served sixty days of disciplinary confinement in the Oneida SHU as a cumulative result of the two disciplinary hearings.  Plaintiff makes no further showing, however, regarding the conditions of his disciplinary confinement, and specifically does not allege that during that time he was subjected to conditions more severe than those ordinarily associated with such SHU confinement.  It is well-established that absent a greater showing, disciplinary confinement of such a modest duration does not rise to a level of constitutional significance necessary to support a procedural due process claim under the Fourteenth Amendment.  *See Colon*, 215 F.3d at 231-32.  Accordingly, I recommend that plaintiff's procedural due process claim be dismissed as deficient as a matter of law, and find it unnecessary to examine whether Deal was afforded procedural due process during the course of the disciplinary proceedings at issue.

G.    *Heck* and *Edwards*

conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not.  *Id.* at 231-32 (305 days of SHU confinement constitutes an atypical and sufficient departure).  In fact, in *Colon v. Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J. and Sack, C.J., concurring in part).

35

In their motion, defendants argue that plaintiff's procedural due process claims are barred under *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364 (1994) and *Edwards v. Balisok,* 520 U.S. 641, 117 S. Ct. 1584 (1997).  *See* Defendants' Memorandum (Dkt. No. 69-3) at 20-21.  That argument is raised in view of the fact that the disciplinary hearings at issue appear to have resulted in a combination of sanctions which included the loss of good time credits, and those determinations were not set aside through applicable, internal channels before this action was commenced. In his response to defendants' motion, plaintiff asserts that he does not challenge the duration of his confinement, nor does he seek a restoration of good time credits.  Under these circumstances, plaintiff has satisfied the requirements of *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), thus permitting this court to adjudicate the section 1983 claims directed toward his disciplinary hearings notwithstanding his failure to succeed in overturning the results of those hearings.

H.    Qualified Immunity

As an alternative basis for dismissing plaintiff's claims against them, defendants assert their entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted).  Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, __ F.3d __, 2007 WL 2067932, at *20-21 (2d Cir. July 20, 2007); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).  The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001); *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

37

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir. 1972)).

Qualified immunity analysis involves a three step inquiry. *Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir. 2003). As a threshold matter it must first be determined whether, based upon the facts alleged, plaintiff has facially established a constitutional violation. *Id.* If the answer to this inquiry is in the affirmative, the court must then turn its focus to whether the right in issue was clearly established at the time of the alleged violation. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001)); *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002). Finally, if the plaintiff had a clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law. *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

As can be seen, the first inquiry in the qualified immunity algorithm is to determine whether a constitutional violation has occurred. Since in

38

this case I have found defendants entitled to summary judgment with regard to certain of plaintiff's claims, leaving intact his excessive force claim and the portion of his retaliation cause of action associated with the second and third misbehavior reports issued to him during the relevant time period, those claims are the appropriate focus of the qualified immunity analysis.

The right under the First Amendment of a prisoner to be free from unlawful retaliation was well-established at the time in dispute.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004); *Dawes*, 239 F.3d at 492; *Collins v. Goord*, 438 F. Supp. 2d 399, 421 (S.D.N.Y. 2006) (citing, *inter alia*, *Gill*).  Similarly, the Eighth Amendment's proscription against the use of excessive force was equally ensconced and well-defined in 2003.  *See Hudson*, 503 U.S. at 5, 112 S. Ct. at 998; *Boddie*, 105 F.3d at 862. Whether the defendants maintained a good faith belief that their actions did not violate these clearly established rights depends upon the resolution of fact issues similar to those identified as precluding the entry of summary judgment on the merits of plaintiff's retaliation and excessive force claims.  As such, I find that the court is not currently positioned to determine defendants' entitlement to qualified immunity from suit, and thus recommend against granting defendants summary judgment dismissing

plaintiff's claims against them on this basis.

IV.    SUMMARY AND RECOMMENDATION

_____Plaintiff's complaint in this action contains an amalgamation of constitutional and state law claims, all of which relate to or stem from the alleged use of excessive force by defendant Yurack against the plaintiff. Having thoroughly reviewed the record now before the court, I find the existence of genuine issues of material fact precluding the entry of summary judgment dismissing plaintiff's excessive force cause of action against defendant Yurack, as well as the retaliation claims asserted with regard to the misbehavior reports issued to the plaintiff on February 2, 2003 and February 3, 2003.  I do find, however, that plaintiff's state tort law claims of assault and battery are subject to dismissal based on N.Y. Correction Law § 24, and that plaintiff's procedural due process cause of action is deficient as a matter of law, and thus recommend that summary judgment be entered dismissing those claims.

Turning to plaintiff's application for permission to amend his complaint in order to assert claims against several defendants not previously named or appearing in the action, I conclude that the interests of justice warrant denial of that motion, both because the governing deadline for amending pleadings and joining parties under the court's case

40

management scheduling order has passed and plaintiff has offered

nothing to establish good cause for overlooking the lateness of his motion,

and in any event the factors normally informing the analysis of whether to

permit amendment of pleadings and joinder of parties counsel against the

amendment.  Based upon the foregoing it is hereby

RECOMMENDED that plaintiff's motion for leave to amend his

complaint and join additional defendants (Dkt. No. 71) be DENIED; and it

is further

RECOMMENDED, that defendants' motion for summary judgment

(Dkt. No. 69) be GRANTED, IN PART, and that plaintiff's procedural due

process claim and assault and battery causes of action, as well as the

portion of plaintiff's retaliation claim related to the January 18, 2003

misbehavior report, be DISMISSED, but that defendants' motion otherwise

be DENIED and that plaintiff's excessive force claims against defendant

Yurack and retaliation cause of action against defendant Almstead related

to the issuance of the February 2 and February 3, 2003 misbehavior

reports remain pending for trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within <u>TEN</u> days.  FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. §

636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85

(2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

Dated:       August 31, 2007
             Syracuse, NY

_____
David E. Peebles
U.S. Magistrate Judge